UNITED STATES LIGHT & HEATING CO. v. SAFETY CAR HEATING & LIGHTING CO.

(Circuit Court, N. D. Illinois, E. D.   October 20, 1911.)

No. 29,529.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SELF-ADJUSTING BRUSH FOR DYNAMO-ELECTRIC MACHINES.

The Bliss patent, No. 525,836, for a self-adjusting brush for dynamo-electric machines, designed for use chiefly in the electric lighting of railway trains to provide automatically for constant polarity, notwithstanding reversal of direction of rotation, while not for a basic invention, and while the elements were old, covers a new and practically useful combination and discloses invention; also *held* infringed.

2. WORDS AND PHRASES—"PIVOT"—"PIVOTAL SUPPORT."

The general meaning of the term "pivot" is such as to imply a fixed shaft or hub, and no one would understand a pivotal support to be other than a rigid, nonrotating shaft support.

In Equity. Suit by the United States Light & Heating Company, appearing as successor to the Bliss Electric Car Lighting Company, against the Safety Car Heating & Lighting Company. On final hearing. Decree for complainant.

Edwin B. H. Tower, Jr., and Jones, Addington, Ames & Seibold, for complainant.

Duell, Warfield & Duell and Robert D. Kellogg, for defendant.

KOHLSAAT, Circuit Judge.   [1] Defendant is charged herein with infringement of patent No. 525,836, granted to William L. Bliss

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

September 11, 1894, for self-adjusting brush for dynamo-electric machines. The one claim of the patent reads as follows, viz.:

"In a dynamo the combination with the commutator, the brushes and the brush-carrier, of a pivotal support upon which the brush-carrier is fitted to rotate freely in either direction, and a fixed stop against which the brush-carrier rotated by the friction of the commutator on the brushes is positively arrested in either direction to stop the brushes in positions the reverse of that which they occupy when their carrier is arrested in the opposite direction, substantially as and for the purpose herein set forth."

The specification sets out that the object of the invention is to provide automatically for constant polarity in a dynamo, notwithstanding reversal of direction of rotation. The device may apply to any use of the dynamo, but is mainly applicable to dynamos actuated by the running gear of railway vehicles for the purpose of charging storage batteries for lighting.

The device is intended to automatically shift the brushes so that their polarity will correspond with the reversal of the rotation of the commutator and thereby remain constant.

The claim calls for a pivotal support for the brush-carrier. The specification (line 59, p. 1) provides for "a fixed hub or pivotal support $c$ which surrounds the shaft A." This shaft "A" is the armature shaft or axle. The brush-carrier is mounted rotatably upon this shaft.

[2] Considerable stress is placed by defendant upon the fact that the claim does not call for a fixed support. The language used is "a pivotal support." The general meaning, however, of the term "pivot," is such as to imply a fixed shaft or hub. No one versed in the art would understand a pivotal support to be other than a rigid, nonrotating shaft support. Clearly, there can be no straining of the rules which govern the extent to which claims may be read in the light of the specification, in giving to the term "pivotal support" the fair and plain definition found in everyday use of the term. This fixed pivotal support and the fixed stop against which the brush-carrier is arrested in either direction and their adjustment to the commutator, brushes, and brush-carrier, constitute the novelty claimed. The friction of the brushes on the commutator is required to be greater than the friction of the brush-carrier upon its fixed support, so that, whenever the direction of rotation of the armature shaft and commutator is changed, the friction of the brushes upon the commutator will be such as to overcome the friction between the brush-carrier and its support, and force the carrier to turn with the commutator until arrested by the stops. The arrangement of the stop or stops with relation to the brush-carrier is such that the reversal of the current which naturally would result from the change of direction of rotation of the dynamo and the reversal which would otherwise have resulted from the change of position of the brushes neutralize each other and preserve the polarity of the current. The location of the stops, also, is so adapted as to permit the brush-carrier to rotate far enough to provide for an angle of lead for the brushes in either direction away from the neutral point.

It is a matter of no importance whether there be one or two stops, nor where they are located.

If it be true that Bliss was the first to accomplish the result claimed in the patent, and the claim be justified by the satisfactory working of the device, then Bliss has made an invention, and a broad one. The prior art, however, is by no means barren of devices very suggestive of the Bliss conception. A number of prior patents are cited by defendant, two of which, Crompton & Swinburne British patent, No. 5,168, of 1886, and the Houghton & White patent, No. 492,291, granted February 21, 1893, are mainly relied on. The former was granted for "improvements connected with electric lighting of trains"; the latter for improvements in commutating apparatus for dynamo-electric machines. Beginning at line 33' of the specification, it is said:

"The dynamo is driven in the usual way, so that, when the train stops or reverses, the dynamo does so too. In this case the brushes must be shifted on reversal. To effect this the brush-carrier or crossbar is mounted on the axle so as to turn with it, but is held by adjustable stops, so that, if the machine goes one way, the brushes go round until the stop holds them in the right position for that direction of rotation, and, if the train goes the other way, the brushes are carried about half a revolution until they come to the other stop. Tangent brushes, or brushes that will allow the commutator to run either way under them, are used in carrying out the invention."

Claim 3 of that patent reads:

"3. In the electric lighting of trains the employment of a dynamo-electric machine having its brushes or collectors mounted on a suitable brush-holder which can move so as to set the brushes correctly to position for either direction of rotation of the armature."

It will be observed that the brush-carrier is mounted upon the axle or shaft of the armature. This, Swinburne, the inventor, who has no further interest in his invention, says was deemed necessary by him in order that the brushes should be actuated by the friction of both the axle-bearing and that of the brushes upon the commutator. Bliss makes the friction between the brushes and the commutator to be so great as to overcome the friction of the bearing. Defendant contends that the use of the armature shaft for a bearing comes within the term "pivotal support." As commonly understood, such is not the case. As above stated, a "pivotal support" is a nonrotatable shaft. References to fixed stars and vehicles at rest are not deemed of weight. In view of the fact that allowance for the angle of lead must be assumed for the purposes of this suit to have been a well-known requisite in the field of armature rotation at the time the Crompton & Swinburne patent was granted, it seems clear that the necessity for its use was assumed in the specification of that patent in the language there used, viz., "the right position," and in claim 3 thereof, "a suitable brush-holder which can move so as to set the brushes correctly to position for either direction of rotation of the armature." Indeed, if it be a fact in the electrical art that allowance must be made for the angle of lead, in such cases, then provision for it must be understood in every such case without special reference to it. True, it appears that the Crompton & Swinburne patent was never manufactured, so there is no evidence that it was a working device. For some reason the evidence upon that point was not produced by defendant. The patentee, Swinburne, seems to have doubts about the operativeness of his

conception. Whether this be correct or not, there seems to be no good reason why the patent with its current notices would not be available as a publication to the extent of its disclosures. It certainly deals with the general principles involved in the patent in suit and removes the latter from the field of basic inventions.

Swinburne says it was the practice of Crompton's to mount the brush arm upon the end of the bearings, but that he deliberately shifted it to the axle because he needed the friction thus attained. "I foresaw," he says, "that the friction of the brushes, that is to say, of such brushes as were in use then, could not be depended on to move the rocker." It appears that carbon brushes were not known in 1886. Swinburne says these would supply more frictional force, but would not have been available for his device because of wear (thereby necessitating the use of spring-pressed shoes or some similar crowding device) and for other reasons. From his testimony it appears that even carbon brushes of the present date cannot be relied on alone in train lighting. He says the production of a successful device from his disclosures would have involved many changes and probably further invention. This witness further says Bliss "shows what appear to be carbon brushes of an early form, mounted in holders which, according to the constructions then common, would have springs pressing the brushes fairly hard down radially onto the commutator." Bliss' commutator is large, while his bearing pivot is small. This gives him larger brush and less bearing friction.

Axle friction, at the present date, is made available through several intermediate inventions. Heretofore, it has not been deemed practicable through its tendency to cause the brushes to wear loose, thereby producing an unreliable friction for shifting purposes. In the absence of such wear, it does not appear but that it would be available. Theoretically, the Swinburne device seems to have embraced substantially the conception of Bliss, lacking just enough of the practical elements to debar it from becoming a commercial success. Axle friction was experimented with in the Preston & Gill patent, No. 602,182, and in the Richards patent, No. 647,155, and in several other patents, and in a method known as the Stone system, and by the Gould Coupler Company, in all these cases unsuccessfully, except as assisted by other separate devices. It must not be overlooked, however, that Bliss purposely chose axle friction, being at the time familiar with the mounting of the brush arm upon the end of the bearing. From the file wrapper and contents of the patent in suit, it appears that the application as first made was rejected on the Houston & White patent, No. 492,291, granted as above set out in 1893 for brushes and holders. Bliss thereupon canceled his claim and presented the claim in suit. The cited patent shows a brush-carrier mounted upon a fixed support, and shifted in case of reversal of rotation of the armature, by the friction of the brushes upon the commutator. The actuation of the brush-carrier, however, is limited to an automatic provision for the changed angle of lead. The reversal of current is prevented by means of a switch automatically moved by the brush-

carrier as it shifts. In presenting his amended claim, Bliss makes the following statement, viz.:

"Applicant does not now claim the utilization of the friction of the brushes on the commutator as a means of shifting the brushes, but his claim is limited to a simple positive stop against which, when the direction of the rotation of the dynamo is reversed, the positions of the brushes are correspondingly reversed and a constant polarity of the terminals of the machine is automatically preserved by the simple operation of shifting the brushes without the use of switches or other devices such as are found in and absolutely necessary to the apparatus described in the said patent of Houghton & White."

Whereby he seems to assert that his priority over Houghton & White consists in the substitution of a positive stop for reversing the position of his brushes, as against the use of switches or other devices. As above stated, this device was not new. There may be some doubt as to whether the shifting of the brush-carrier by friction so as to provide for the angle of lead, as compared with the Bliss brush-carrier movement, is not merely a matter of degree.

It seems to be clear that all the elements of the patent in suit were well known at the date of the grant thereof. Bliss' exact arrangement was not then known, or at least not in use. The prior art very distinctly suggested it, but the conditions necessary to successful construction were not at hand.

The electrical art is keenly alive to any practical advances. Though not very satisfactorily shown in the evidence, it may be admitted that the patent in suit supplied a need of that art. Bliss was the first to cover the field. He has brought forth a practical and therefore a commercial device for the maintenance of a constant polarity in dynamos, notwithstanding the reversal of the armature. He has provided practically for a steady current for lighting and heating railroad cars and has covered all intermittance of current for that purpose, by means of a storage battery. He has put these old elements together in a new way—more simple than theretofore obtained, and with results equal to any of the more elaborate devices. His invention is not startling, but very useful, as defendant may not deny. There is no new principle involved, but there is a new device—new in its extensions of old principles, new in its combinations as a whole. One can hardly harness electricity to usefulness without earning some right to be held to be an inventor, even though he seem to trench upon what is contemplated by others who have spoken but have not acted. It is therefore deemed established for the purposes of this hearing that the patent in suit is valid.

Defendant mounts its brush-carrying yoke or ring on an annular bearing on the outer surface of the main end bearing casting. This bearing is larger than the commutator, unlike the pivotal bearing of the patent in suit. Brush friction is relied on to reverse the position of the brushes upon reversal of direction of the dynamo. Provision is made for the angle of lead. In no essential does it differ from the Bliss patent. True, all of its elements are old, but its whole is that of Bliss. If the latter patent is valid, defendant infringes. Having sustained the Bliss patent, it follows that defendant infringes; and it is so held. The patent having expired, an accounting is ordered.